UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BETH ELAYNE JONES, | ) | 5:15CV0076 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | MAG. JUDGE KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | MEMORANDUM |
| | ) | AND OPINION |

McHARGH, MAG. JUDGE

The issue before the court is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying (in part) Plaintiff Beth Elayne Jones' application for Social Security Disability and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

## I.  PROCEDURAL HISTORY

On March 31, 2011, Plaintiff Beth Elayne Jones (hereinafter, "Jones") applied for Disability Insurance and Supplemental Security Income benefits.  (Doc. 11, tr., at 242, 249.)   Jones' applications were denied initially and upon reconsideration.  (Tr., at 120-135, 136-151, 152-153, 154-155, 156-175, 176-195.)

On January 24, 2012, Jones filed a written request for a hearing before an administrative law judge.  (Tr., at 67-68.)

An Administrative Law Judge ("the ALJ") convened a hearing in Akron on May 15, 2013, to hear Jones' case.  (Tr., at 69-119.)  Jones was represented by counsel at the hearing.  (Tr., at 71.)  Michael A. Klein ("Klein"), a vocational expert, attended the hearing via telephone and provided testimony.  (Tr., at 71, 106-114.)

On August 6, 2013, the ALJ issued his decision applying the standard five-step sequential analysis[1] to determine whether Jones was disabled.  (Tr., at 26-44.)

---

[1]  Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  Id. § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  Id. § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

Based on his review, the ALJ concluded Jones was "disabled" from July 1, 2011, through December 31, 2012, but that her disability ended on January 1, 2013, because of medical improvement.[2]  (Tr., at 26-27, 43-44.)  Following the issuance of this ruling, Jones sought review of the ALJ's decision from the Appeals Council.  (Tr., at 19.)  However, the council denied Jones' request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr., at 1-4.)  Jones now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 1383(c).

Jones briefs a single issue:

1.  Does substantial evidence support the Commissioner's final decision that the Plaintiff was not disabled after December 31, 2012, and thus was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act?  See 42 U.S.C. Sections 405(g), 416(i), 423(d).  (2009)

(Doc. 12, at 1.)

## II.  PERSONAL BACKGROUND INFORMATION

Jones was born on April 8, 1972, and was 38 years old as of the date of her application.  (Tr., at 242.)  Jones has completed four or more years of college.  (Tr.,

---

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

[2]  The finding that medical improvement had occurred was the result of an additional evaluation and determination, as set forth in 20 C.F.R. §§ 404.1594 and 416.994.  See tr., at 28; and *infra*, at "VIII. Analysis."

at 293.)  She has past relevant work as a medical secretary, hospital secretary, and administrative assistant.  (Tr., at 35, 107.)

### III.  MEDICAL EVIDENCE

In her application, Jones reported that "all of the physical or mental conditions" that limited her ability to work were "Interstitial cystitis, cyclical vomiting, Tonic Clonic Seizures, endometriosis, dissociative disorder."  (Doc. 11, tr., at 292.)  The ALJ found that Jones has the following severe impairments: seizure disorder, cyclic vomiting syndrome, history of endometriosis and interstitial cystitis, status-post hysterectomy, anxiety and depression.  (Tr., at 30.)

Given the contested issues in this case, the primary focus is on evidence relating to the claimant's medical conditions of seizure disorder and cyclic vomiting syndrome, as well as her anxiety and depression.  Esther Rehmus, MD, has been Jones' treating physician for her chronic nausea and abdominal pain, as well as for acute episodes of vomiting, nausea and pain.  *See generally* tr., at 862-876.  The parties contest the claimant's condition and symptoms in late 2012 and early 2013, *see, e.g.*, doc. 12, at 2, and the court addresses the evidence relating to that dispute below.

4

IV.  TESTIMONY OF VOCATIONAL EXPERT

The vocational expert, Michael A. Klein, testified.  The ALJ stated that Jones had past work as an administrative assistant and as a medical secretary.  (Doc. 11, tr., at 107.)

The ALJ posed a hypothetical question concerning an individual of the same age, education and vocational background.  The hypothetical person has the residual functional capacity to perform medium work, as defined by the regulations. The person would be limited to never climbing ladders, ropes, and scaffolds; and must avoid all exposure to hazards such  as inherently dangerous moving machinery, and unprotected heights.  The individual would further be limited to no commercial driving, and limited to detailed but not complex tasks.  The vocational expert was asked whether such an individual could perform any of the claimant's past work. (Tr., at 107-108.)

Klein responded no, because of the limitation concerning complex tasks, the past work could not be performed.  The ALJ then asked whether there would be other work for such an individual.  (Tr., at 108.)

Klein responded that there would be work that such a hypothetical individual could perform at the medium level.  Examples would include:  (1) hand packaging, DOT 559.687-074, with over 1,500 positions in the Akron area, 21,000 jobs statewide, and 434,000 nationally; and, (2) order filler, DOT 922.687-058, with over 1,200 locally, 20,000 jobs statewide, and 350,00 nationally.  (Tr., at 108.)

At the light level, the VE provided two examples of cashier jobs, one of which would be retail:  (3) cashier, 311.677-010, approximately 1,200 jobs locally, 15,000 in the state, and 391,000 nationally; and, (4) cashier light, DOT 211.462-010, approximately 1500 in the local region, 19,000 state, and 315,000 nationally.  (Tr., at 108-110.)  The VE testified that those were illustrative examples.  (Tr., at 109.)

The ALJ then posed a second hypothetical, assuming the same facts as the first, except that this individual would be limited to simple, routine, repetitive tasks, and must work in a static environment with infrequent change.  Any changes would be explained or demonstrated, and could be learned in thirty days or less.  There could be not be a fast pace, or strict production or time quotas.  The individual could not be responsible for the health or safety of others.  (Tr., at 110.)  The VE testified that the previously mentioned positions would not be available to such an individual, because those jobs for the most part would be more fast paced.  (Tr., at 110-111.)

Klein testified that there would be other work for such an individual:  (1) "light cleaner housekeeping jobs," DOT 323.687-014, approximately 2,000 locally, 25,000 statewide, and 800,000 nationally; (2) "light retail marker jobs," DOT 920.587-014, approximately 1500 locally, 20,000 statewide, and 420,000 nationally; and, (3) "a reduced number of sorting jobs," DOT 789.687-034, 500 locally, 15,000 in the state, and 150,000 nationally.  All SVP level two.  (Tr. at 111.)

The ALJ posed a third hypothetical, limiting the hypothetical person to light work.  The VE said the same three job types would be available.  The ALJ clarified

that the second hypothetical was intended to encompass medium level work, but the VE had responded with light jobs.  (Tr., at 111-112.)

Klein testified that the generally accepted tolerated rate for an individual being off-task was no more than twenty percent, and absences no more than one day per month.  In response to the ALJ's question, Klein stated that if the individual was absent greater than one day per month because of their physical or psychological conditions, no competitive employment would be available.  (Tr., at 112.)

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his August 6, 2013, decision:

1.  The claimant meets the insured status requirements of the Social Security Act (the "Act") through December 31, 2016.

2.  The claimant has not engaged in substantial gainful activity since July 1, 2011, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.  From July 1, 2011, through December 31, 2012, the period during which the claimant was under a disability, the claimant had the following severe impairments: seizure disorder, cyclic vomiting syndrome, history of endometriosis and interstitial cystitis, status-post hysterectomy, anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).

4.  From July 1, 2011, through December 31, 2012, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7

5.  After careful consideration of the entire record, the undersigned finds that, from July 1, 2011, through December 31, 2012, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant may never climb ladders, ropes or scaffolds and must avoid all exposure to workplace hazards, including inherently dangerous moving machinery, unprotected heights[,] and commercial driving; the claimant is limited to the performance of simple, routine, repetitive tasks, undertaken in a work setting that is static [defined as one without strict time requirements or production quotas, in which workplace changes would be infrequent, with ample opportunity for such changes as did occur to be fully explained, demonstrated and learned within thirty days and which confers upon the claimant, no responsibility for the health or safety of others]; due to the associated symptoms of her medical conditions, including pain and the frequent need to seek medical treatment, the claimant would be unable to sustain a forty hour work-week or equivalent full-time schedule.

6.  From July 1, 2011, through December 31, 2012, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was a younger individual age 18-49, on the established disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  The claimant's acquired job skills do not transfer to other occupations with the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10.  From July 1, 2011, through December 31, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11.  The claimant was under a disability, as defined in the Social Security Act, from July 1, 2011, through December 31, 2012 (20 CFR 404.1520(g) and 416.920(g)).

12.  The claimant has not developed any new impairment or impairments since January 1, 2013, the date the claimant's disability ended.  Thus, the claimant's current severe impairments are the same as that present from July 1, 2011, through December 31, 2012.

13.  Beginning January 1, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14.  Medical improvements occurred as of January 1, 2013, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

15.  The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16.  After careful consideration of the entire record, the undersigned finds that, beginning January 1, 2013, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant may never climb ladders, ropes or scaffolds and must avoid all exposure to workplace hazards, including inherently dangerous moving machinery, unprotected heights[,] and commercial driving; the claimant is limited to the performance of simple, routine, repetitive tasks, undertaken in a work setting that is static [defined as one without strict time requirements or production quotas, in which workplace changes would be infrequent, with ample opportunity for such changes as did occur to be fully explained, demonstrated and learned within thirty days and which confers upon the claimant, no responsibility for the health or safety of others].

17.  The claimant is still unable to perform past relevant work (20 CFR 404.1565 and 416.965).

18.  The claimant's age category has not changed since January 1, 2013 (20 CFR 404.1563 and 416.963).

19.  The claimant's education level has not changed (20 CFR 404.1564 and 416.964).

20.  Beginning January 1, 2013, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

21.  Beginning January 1, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

22.  The claimant's disability ended January 1, 2013 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

(Doc. 11, tr., at 30-32, 35-37, 39, 42-43.)

The court will discuss the ALJ's decision in more detail when addressing the arguments of the parties.  In summary, the ALJ found that Jones was under a disability from July 1, 2011, through December 31, 2012, and could not perform any of her past relevant work, nor were there jobs that existed in significant numbers that she could have performed during that period.  (Tr, at 35-37.)

As to the closed period of disability, the ALJ found Jones had mild restrictions in activities of daily living, and moderate difficulties in maintaining social function, and maintaining concentration, persistence and pace.  (Tr., at 32.)

Again, as to the closed period of disability, the ALJ found Jones that her conditions of cyclic vomiting disorder, endometriosis, interstitial cystitis, and seizure disorder had caused a significant disruption of her normal daily life, frequent recurrences of which would be preclusive of consistent work.  (Tr., at 33.) The ALJ accorded significant weight to the opinion of her treating physician, Dr.

10

Rehmus, that Jones would have frequent inability to complete work tasks due to her condition(s).  (Tr., at 34.)

As to her mental conditions, the ALJ accorded little weight to two consulting examiners, who each examined her on a single occasion, and who opined that Jones would have mild limitation in psychological work-related abilities.  Some weight was accorded to John Nadas, M.D., a treating source who opined that Jones had some difficulty with stress, but got along with others.  The ALJ found Dr. Nadas' mental limitations "so vague as to be resistant to analysis."  (Tr., at 35.)

The ALJ determined, however, that medical improvement occurred as of January 1, 2013, and that the improvement that occurred resulted in an increase in Jones' residual functional capacity.  (Tr., at 39.)  This finding is the major dispute between the parties.

The ALJ found that Jones has not been under a disability since January 1, 2013, and that there are jobs that exist in significant numbers that she could perform.  (Tr., at 42-43.)

## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to

11

result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. § 416.905.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kennedy v. Astrue*, No. 06-6582, 2007 WL 2669153, at *3 (6th Cir. Sept. 7, 2007); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *See Kennedy*, 2007 WL 2669153, at *3; *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of

credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, the

court may examine all the evidence in the record in making its decision, regardless

of whether such evidence was cited in the Commissioner's final decision.  *See*

*Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).


## VIII.  ANALYSIS

Jones briefs a single issue:

1.  Does substantial evidence support the Commissioner's final decision
that the Plaintiff was not disabled after December 31, 2012, and thus
was not entitled to Disability Insurance Benefits (DIB) under Title II
of the Social Security Act?  See 42 U.S.C. Sections 405(g), 416(i),
423(d).  (2009)

(Doc. 12, at 1.)  She contends that the ALJ's decision is not supported by substantial

evidence because the ALJ's finding of medical improvement is not supported by

substantial evidence.  (Doc. 12, at 7-11.)

The ALJ outlined the regulatory provisions which govern this analysis:

In order to find that the claimant's disability does not continue
through the date of the decision, the undersigned must show that
medical improvement has occurred which is related to the claimant's
ability to  work, or that an exception applies (20 CFR 404.1594(a) and
416.994(a)).  In most cases, the undersigned must also show that the
claimant is able to engage in substantial gainful activity (20 CFR
404.1594(a) and 416.994(a)).  In making this determination, the
undersigned must follow an additional eight-step evaluation process
for the Title II claim and a seven-step process for the Title XVI claim
(20 CFR 404.1594 and 416.994).  If the undersigned can make a
decision at a step, the evaluation will not go on to the next step.

(Tr., at 28.)

13

Relevant to the analysis are the findings that the ALJ made as to the closed period of disability, namely from July 1, 2011, through December 31, 2012.  The ALJ determined that during that period, the claimant had the following severe impairments: "seizure disorder, cyclic vomiting syndrome, history of endometriosis and interstitial cystitis, status-post hysterectomy, anxiety and depression."  (Tr., at 30.)  Considering the claimant's RFC, the ALJ found that there were no jobs that existed in significant numbers that Jones could have performed, during the closed period of disability.  (Tr., at 36.)

The claimant has the burden to prove that she is disabled and entitled to benefits.[3]  *Booms v. Commissioner*, 277 F.Supp.2d 739, 743 (E.D. Mich. 2003).  A determination of disability does not create a presumption of continuing disability.  *Kennedy*, 2007 WL 2669153, at *3; *Cutlip v. Secretary, HHS*, 25 F.3d 284, 286 n.1 (6th Cir. 1994) (per curiam); *Booms*, 277 F.Supp.2d at 744.  A person determined to be disabled at some point is not entitled to the continuation of benefits if the

---

[3] Jones contends that "the Commissioner has the burden of coming forward with evidence of medical improvement when the issue is termination of benefits."  (Doc. 12, at 7, citing *Haynes v. Secretary, HHS*, 734 F.2d 284, 288 (6th Cir. 1984).)  First, this is not a "termination of benefits" case, and, second, *Haynes* was based on a theory that, once determination of disability had been made, a claimant was entitled to a presumption of continuing disability.  *Haynes*, 734 F.2d at 288.  That presumption no longer holds.  *Cutlip v. Secretary, HHS*, 25 F.3d 284, 286 n.1 (6th Cir. 1994) (per curiam).

14

disability dissipates to the extent that the person is able to perform gainful activity. *Booms*, 277 F.Supp.2d at 744.

The issue in this case is whether substantial evidence shows there has been medical improvement in Jones' impairments, other than improvement which is not related to her ability to work. *Kennedy*, 2007 WL 2669153, at *4; *Cutlip*, 25 F.3d at 286. The Sixth Circuit, in *Kennedy*, addressed this issue:

> The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." Id. And a medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities ..." 20 C.F.R. § 404.1594(b)(3). See also Nierzwick v. Commissioner of Social Security, 7 Fed.Appx. 358 (6th Cir.2001).

*Kennedy*, 2007 WL 2669153, at *3; *see also Booms*, 277 F.Supp.2d at 744.

The "comparison point date" is generally the most recent favorable decision that the claimant was disabled. *Kennedy*, 2007 WL 2669153, at *3; *Booms*, 277 F.Supp.2d at 745. Here, however, there was no prior disability determination; rather, the ALJ found that Jones was disabled for a closed period, in the same decision which found medical improvement. In such a situation, the onset date is used as the comparison point. *Booms*, 277 F.Supp.2d at 745.

15

Jones points out that the ALJ's finding of medical improvement is supported as follows:

> Commencing with the claimant's November 2011 hysterectomy, the treatment notes indicate slow improvement in her condition, with a concomitant reduction in medication regimen (26F/5, 6). The records indicate a single, brief emergency department visit in February 2013 (31F/2), normal physical exams (26F/1) and an expanding range of activities of daily living (47F/1-4).

(Tr., at 39.)  Jones contends that the ALJ's "support for his conclusion of medical improvement relies on a mischaracterization of the paltry evidence that he cites, and the ALJ also ignores evidence which leads to the conclusion that Plaintiff has not had medical improvement."  (Doc. 12, at 8.)

The court notes, however, that Jones does not address the more detailed analysis of her medical history which the ALJ outlines in arriving at her post-January 2013 RFC (tr., at 39-42), the ALJ's consideration of which is relevant as well to the issue of medical improvement.  For example, the ALJ pointed out that Jones had sought no treatment for seizure disorder since January 1, 2013, "and her primary care physician had dropped seizure disorder from her assessment and plan, since November of 2012."  (Tr., at 40, citing 26F/5.)

As another example, the ALJ stated that Jones had been diagnosed with anxiety and depression, but found the record as a whole "is not supportive of the contention that the existence of these impairments would be preclusive of all types of work."  (Tr., at 40-41.)  The ALJ said that Jones was seeing a family therapist, who reports that she has been reducing her anxiety, working her way back from

16

depression and was looking for a job.  The ALJ determined that "the symptom limitations relevant to these impairments would not be as severe as alleged," and that the conditions in the post-January 2013 RFC would make adequate allowance for these impairments.  (Tr., at 41.)

The ALJ's "finding of medical improvement" in the decision (tr., at 39) would appear to simply be a summary of the more detailed discussion which is set forth in the determination of her RFC.  Notwithstanding that, the court will look specifically at what has been contested by Jones.

## A.  Dr. Rehmus

The ALJ cited the November 29, 2012, treatment notes of Dr. Esther Rehmus.  (Tr., at 39, citing "26F/5, 6.")  The narrative notes read:

> History & Physical:  40 year old woman with chronic and intermittent severe abdominal pain for many years; porphyria ruled out; has had 16 laparoscopies for endometriosis and finally had hysterectomy/BSO November 2011; slow improvement since then with decrease in meds overall; she also has seizure disorder, which is better on Vimpat. She comes in now with nausea, vomiting, pain, much like prior episodes.

(Tr., at 866.)

> Impression & Plan:  1.  Chronic pain/nausea syndrome; doing better overall, and on lower doses of medicines;
> 2.  Acute episode of nausea, vomiting; will give 2 liters NS, IV ativan, phenergan and dilaudid and see if we can get this settled down.
> ADDENDUM: admitted as she was better, but not back to baseline.

(Tr., at 867.)

The claimant reads these notes to indicate that the "improvement is limited to her endometriosis."  She believes that there is no evidence in the notes of

improvement in her abdominal pain, nausea and vomiting.  (Doc. 12, at 8.)  The court does not find the notes to be limited to improvement solely of her endometriosis.  Dr. Rehmus' summary was "Chronic pain/nausea syndrome; doing better overall, and on lower doses of medicines" (tr., at 867), which can be read to indicate that Jones continues to have issues with pain and nausea (indeed, it was apparently the reason for her visit), but Dr. Rehmus plainly states Jones is doing better overall.  (Tr., at 867; *see also* tr., at 866 "slow improvement" since November 2011.)  Dr. Rehmus notes that Jones herself "admitted as she was better," although still not back to normal.  (Tr., at 867.)  "Medical improvement" is "any decrease in the severity" of the claimant's impairments.  *Kennedy*, 2007 WL 2669153, at *4; *Booms*, 277 F.Supp.2d at 744.

The claimant also notes that on February 4, 2013, she reported to Dr. Rehmus with an another acute episode of nausea and vomiting.  (Doc. 12, at 9, citing tr., at 862-863.)  Her physical exam was that she looked "weak and worn out," but all other areas were noted as normal.[4]  (Tr., at 862.)  Dr. Rehmus noted chronic pain/ nausea syndrome, and bumped up her duragesic dosage.  (Tr., at 863.)  Jones argues that the ALJ's finding of medical improvement thus cannot be based on improvement in her symptoms, signs and/or laboratory findings related to her "most debilitating conditions, those causing pain, nausea, and vomiting."  (Doc. 12, at 9, citing 20 C.F.R. § 416.994(b)(1)(ii).)

---

[4] As Jones points out, the ALJ characterized this visit as a "normal physical examination."  (Doc. 12, at 9 n.2, citing tr., at 39.)

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *See Kennedy*, 2007 WL 2669153, at *3; *Mullen*, 800 F.2d at 545; *Kinsella*, 708 F.2d at 1059.  The ALJ did point to substantial evidence which supports a finding of medical improvement.

### B.  Activities of daily living

Jones contests the ALJ's finding, in support of medical improvement, where the ALJ pointed to "an expanding range of activities of daily living," referring to the treatment notes of Susan Stocker, LMFT.[5]  (Doc. 12, at 9, see tr., at 39.)  Jones contends that Stocker's notes do not support the ALJ's conclusion.

Stocker noted on May 17, 2012, that Jones had returned to therapy after many years.  The therapist noted that Jones was a "PTSD survivor now diagnosed w/CVS," and consequently increased anxiety was an issue, due to an "unusually complex illness + living with schizophrenic sister."  Stocker intended to work to reduce Jones' anxiety.  (Tr., at 1188.)

It appears that Jones met with Stocker weekly for the rest of May and June, and twice in July 2012.  Ways to reduce her anxiety were discussed, and Stocker

---

[5] An "LMFT" (Licensed Marriage and Family Therapist) is not an "acceptable medical source," but may be considered as an "other source" under the regulations. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012); *Hill v. Astrue*, No. 5:12CV00072R, 2013 WL 3293657, at *3 (W.D. Ky. June 28, 2013) *aff'd*, 2014 WL 1257948 (6th Cir. Mar. 27, 2014).

generally noted depression and anxiety, and extreme ups and downs related to her medical issues.  (Tr., at 1188-1189.)  On August 2, 2012, Stocker noted that Jones had "newfound pleasure in getting outside," alone, going for walks.  Still, on August 31, Jones reported feeling frustrated and hopeless, with rising anxiety.  (Tr., at 1189.)

During the fall of 2012, Jones' visits became intermittent, possibly because of issues with her insurance coverage (*see* 9/12 note).  (Tr., at 1189.)  Stocker noted she would continue to work with Jones when possible.  On November 14, 2012, Jones reported "so many CVS attacks," often without warning, which were causing her "unimaginable stress."  (Tr., at 1189.)

On December 12, 2012, Jones reported that she was feeling better, and making progress with her sister, and her mother.  She had "started art work" (?), healing and therapy.  (Tr., at 1190.)

In January, February and March 2013, it appears that Jones was seeing Stocker twice monthly.  On January 9, Stocker reported that Jones was "so depressed" and traumatized by her recent episode of vomitting.  On January 23, Jones reported decreased anxiety, and discussed "getting as strong as possible, walking, eating, self-care."  (Tr., at 1191.)

On February 20, 2013, Jones reported another hospital stay, and more CVS issues.  On March 20, Jones reported she was "struggling back from depression." On April 1, 2013, Stocker noted a "slight upswing in attitude," that her depression had lifted, and anxiety decreased.  (Tr., at 1191.)

20

As noted earlier, the ALJ had found Dr. Nadas' mental limitations "so vague as to be resistant to analysis." (Tr., at 35.) As to the post-January 2013 period, the ALJ accorded little weight to Stocker's April 2, 2013, opinion that "neither independent living nor returning to the work world is possible" because she never knows when her physical issues will manifest. The ALJ found that this opinion was beyond the bounds of her certifications. (Tr., at 880.)

Other than arguing that the ALJ's finding that an "expanding range of daily activities," in support of medical improvement is insufficient, Jones does not address whether or not her depression and anxiety should be considered improved.

The court finds that the ALJ did point to substantial evidence which supports a finding of medical improvement, considering the decision as a whole.

### C.  Post-hearing evidence

Jones also points to a Sept. 27, 2013, note, provided as evidence to the Appeals Council, wherein Dr. Rehmus opined that Jones "remains completely disabled regarding her seizures, cyclic vomiting syndrome. She has had better management and thus few hospitalizations but underlying disorders have not changed – she remains unemployable." (Doc. 12, at 9; tr., at 7.)

For purposes of judicial review, the "record" is "the evidence upon which the findings and decision complained of are based." Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) (quoting 42 U.S.C. § 405(g)). Where, as here, the Appeals Council denied review, the record is the information that was before the ALJ, the

21

final administrative decisionmaker.  Matthews, 239 F.3d at 594.  This court cannot consider the Sept. 27, 2013, note in its review of the ALJ's decision.

In any event, whether Jones is "unemployable" is a conclusion on the ultimate issue of disability.  The issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner.  See 20 C.F.R. §§ 416.927(d)(1), 404.1527(d)(1); Vance v. Commissioner of Social Security, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008); Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) (opinion that claimant is "disabled" is not a medical opinion); Walker v. Secretary, HHS, 980 F.2d 1066, 1070 (6th Cir. 1992). Accordingly, opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference.  See 20 C.F.R §§ 416.927(d)(3), 404.1527(d)(3).

The Commissioner argues that Jones is not entitled to a "sentence-six" remand.  (Doc. 14, at 9-11.)  However, as the Commissioner notes, Jones does not request a "sentence-six" remand.  *Id.* at 9; *see also* doc. 15, at 1.


SUMMARY

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *See*

*Kennedy*, 2007 WL 2669153, at *3; *Mullen*, 800 F.2d at 545*; Kinsella*, 708 F.2d at 1059.  The ALJ did point to substantial evidence which supports a finding of medical improvement.

The ALJ's findings were supported by relevant evidence and consistent with the record as a whole.  The court finds that the ALJ's decision is based on substantial evidence in the record, as outlined in his findings and supported by medical evidence.  Accordingly, that decision is AFFIRMED.


IT IS SO ORDERED.

Dated:   March 18, 2016           /s/ Kenneth S. McHargh
                                Kenneth S. McHargh
                                United States Magistrate Judge